Receipt # 066054

ORIGINAL

FILED
JAN 24 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHE CONSULTING, INC., Plaintiff | ) | |
| vs. | ) | Case No. 07-55 C |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

COMES NOW the Plaintiff CHE Consulting, Inc. ("CHE") by and through its undersigned counsel, and files this Verified Complaint for Declaratory Judgment and Temporary, Preliminary and Permanent Injunctive Relief against the United States of America, regarding a procurement conducted by the General Services Administration ("GSA") on behalf of the Naval Oceanographic Office ("NAVO") otherwise referred to as "Agency" or "Government". In support of this action, CHE states as follows:

**Nature of the Action**

1. This is an action for declatory and injunctive relief pursuant to 28 U.S.C. § 1491 and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

2. This action seeks review of the Agency's decision to purposely restrict competition by unnecessarily bundling contract requirements.

3. The solicitations at issue seek a single vendor that can provide both hardware and software maintenance services to robotic tape library systems originally manufactured by Storage Technology Corporation ("StorageTek"), which is a subsidiary of Sun Microsystems.

4. Because the software is the intellectual property of Sun Microsystems, only it, through its subsidiary StorageTek, can actually perform the software maintenance requirements.

5. Unlike the software, however, maintenance of the actual robotic tape library system (i.e. the hardware) can be accomplished by a number of different vendors, including CHE.

6. Bundling software maintenance with hardware maintenance precludes companies like CHE from competing for the hardware portion of the contract.

7. Moreover, this Agency's decision to bundle these two requirements into a single contract is contrary to the routine practices

of other federal agencies under the auspices of the Department of Defense.

8. Numerous federal agencies have StorageTek robotic tape library systems. Yet they, unlike NAVO, do not require a single vendor to perform both the software and hardware maintenance services.

9. Rather, these federal agencies procure these distinct maintenance services separately, thus promoting, rather than restricting, competition.

10. CHE is simply requesting that NAVO fall into line with other federal agencies and procure these discrete services independently from one another.

**Jurisdiction and Venue**

11. This Court has original jurisdiction over pre-award bid protests pursuant to 28 U.S.C. § 1491(b)(1) and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1481.

## The Parties

13. CHE is a preeminent provider of computer hardware engineering services to the federal government, various state governments and private industry – including numerous Fortune 100 companies.

14. CHE currently maintains 75 hardware maintenance service contracts for the equipment at issue in these solicitations across 201 locations within the United States, and four contracts in foreign countries.

15. In fact, CHE's total StorageTek robotic tape library maintenance portfolio makes up approximately 12% of the entire market segment within the U.S. And that has been achieved in only 10 short years of existence.

16. Out of this total, not one customer in one location bundles the software maintenance services with that of the hardware maintenance services.

17. Such government customers include, but are not limited to:

- Defense Enterprise Computing Centers (DECC) for the Defense Information Systems Agency (DISA) supporting all Department of Defense (DoD) branches;

- Defense Logistics Agency;
- Air Force Climatology Control Center;
- Bureau of the Public Debt
- Office of the U.S. Courts;
- Department of Justice;
- Enlisted Evaluation Records Center, Department of the Army;
- Department of Immigration and Naturalization (Homeland Security);
- Naval Medical Management Center;
- Naval Post Graduate School;
- North Carolina Department of Treasury;
- NOAA The National Weather Service;
- Integrated Personnel Enlisted Records Management System, Department of the Army;
- Personnel Enlisted Systems Agency, Department of the Army;
- United States Military Entrance Processing Command; and
- United States Postal Service.

18. NAVO is an arm of the High Performance Computing Modernization Program (HPCMP). Essentially, it is one of four locations that is responsible for Major Shared Resource Centers

(MSRCs), which provides a high performance computing environment to various federal agencies.

19. For example, NAVO acquires and analyzes global ocean and littoral data to provide services for the Navy, civilian, national and international customers.

20. For purposes of perspective, only 15% of NAVO's computational cycles actually support ongoing Naval operations. In contrast, federal DoD customers like DISA utilize their robotic tape libraries exclusively (i.e. 100%) for the warfighter. Yet they, unlike NAVO, procure the software maintenance services separately from the hardware maintenance services.

**Procurement Background**

21. On August 21, 2006, solicitations 4THG17072001 and 4THG17072002 were issued to obtain a single vendor for hardware and software maintenance of StorageTek robotic tape library systems at NAVO.

22. Upon learning of this procurement, CHE personnel contacted the Contracting Officer and requested that the software and hardware components be segregated into separate procurements.

23. At first, the CO resisted.

24. But then the CO researched the issue by seeking technical advice from Mr. Billy Peck and Mr. Marty Zavatchan of Lockheed Martin Space Operations. Both men are the on-site contractor technical staff for the MSRC site. As such, it is believed that they work with both systems on a daily basis.

25. Specifically, the CO inquired whether there were any legitimate technical reasons why only a single vendor should be allowed to conduct both hardware and software maintenance. Both experts said there was not.

26. Mr. Peck and Mr. Zavatchan were in agreement that there was no legitimate technical reason preventing one vendor from providing software support while a different vendor maintained the hardware.

27. As such, the CO revised the solicitation and debundled the two maintenance requirements.

28. CHE provided a responsive proposal for the hardware maintenance services.

29. Upon information and belief, CHE provided the lowest bid for such services.

30. After receiving the bids, the Contracting Officer sent them to Mr. Pete Gruzinskas of NAVO for evaluation and review.

31. In a September 28, 2006 e-mail to the CO, Mr. Gruzinskas took issue with the CO's decision to debundle the hardware and software maintenance services.

32. Mr. Gruzinskas claimed, among other things, that NAVO had always had a single vendor perform both services.

33. And although he admittedly had no experience with having different vendors perform these two services, he nevertheless concluded that NAVO would not experience the same level of service if contracts were let to two vendors, as opposed to one.

34. Based upon his e-mail, the CO cancelled the solicitations. She then issued new solicitations which once again sought a single vendor to perform both hardware and software maintenance services.

**Agency Level Protest**

35. CHE attempted to resolve this issue without court intervention by instituting an agency level protest.

36. CHE explained in detail how numerous DoD agencies, as well as other federal and state agencies utilize different contractors

for software and hardware maintenance of the exact same equipment that is at issue in this procurement.

37. CHE specifically requested that Mr. Gruzinskas perform just some simple market research by contacting his fellow federal employees who do not bundle these separate maintenance services.

38. He would have found, as CHE has learned, that concerns of having two vendors, as opposed to one, are simply unfounded, and that these agencies have been pleased – not only with the increase in competition which results in lower prices – but also with the level of service they receive from the separate contractors.

39. But the Agency refused to conduct such reasonable market research, choosing instead to simply deny CHE's protest. Indeed, as this Court will observe once the administrative record is produced, the Agency essentially ignored each and every issue brought up by CHE at the agency level.

40. The Agency's decision to rebundle these hardware and software maintenance services unduly restricts competition and is therefore a violation of the Competition in Contracting Act.

**Count I – The Agency's Actions Are Arbitrary and Capricious and Contrary to Law**

41. CHE realleges and incorporates herein the allegations contained within paragraphs 1 through 40 set forth above.

42. The Agency's decision to bundle hardware and software maintenance services and its refusal to conduct market research on the issue is both arbitrary and capricious, without a rational basis and is contrary to applicable statutes and regulations.

43. CHE has been and will be directly harmed by the Agency's improper actions.

44. Accordingly, the Agency should be enjoined from proceeding under the flawed solicitations.

**Count II – The Agency's Actions Constitute an Abuse of Discretion**

45. CHE realleges and incorporates herein the allegations contained within paragraphs 1 through 44 as set forth above.

46. The Agency's decision to bundle hardware and software maintenance services and its refusal to conduct market research on the issue constitutes an abuse of discretion on the part of the Agency.

47. CHE has been and will be directly harmed by the Agency's improper actions.

48. Accordingly, the Agency should be enjoined from proceeding under the flawed solicitations.

WHEREFORE, CHE prays this Court to enter judgment in CHE's favor and against the Agency as follows:

a. Declare that the bundling of hardware and software maintenance services is improper and not in accordance with applicable laws and regulations;

b. Declare that the Agency's decision to refuse to engage in market research on whether other DoD agencies bundle such services was improper and not in accordance with applicable laws and regulations;

c. Enjoin the Agency from proceeding under the flawed solicitations;

d. Direct the Agency to revise the solicitation to once again debundle these services;

f. Grant CHE its costs in this action; and

g. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

THE KELLOGG LAW FIRM

By________________________

Steven E. Kellogg
2129 W. Main Street
Belleville, IL 62226
(618) 234-1900
(618) 234-5594 FAX
skellogg@kellogglawfirm.com

Attorney for the Plaintiff

**Certificate of Service**

I hereby certify that a true and accurate copy of the foregoing was served on the Justice Department and the Contracting Officer via facsimile this 23rd day of January, 2007.

________________________

## VERIFICATION OF COMPLAINT

I, David L. York, President and CEO of CHE Consulting, Inc. hereby declare that I have read the foregoing Verified Complaint, and can confirm that the facts as alleged are true and correct to the best of my knowledge and belief.

Date: January 23, 2007

David L. York

Sworn to and subscribed before me this 23rd day of January, 2007.

NOTARY PUBLIC

My Commission expires: 12/06/2008

Wanda L Grimm
Notary Public Notary Seal
State of Missouri County of St. Louis
My Commission Expires 12/06/2008
Commission # 04648813