**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **CHE CONSULTING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-55C** |
| | ) | |
| **THE UNITED STATES,** | ) | **(Judge Wheeler)** |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **STORAGE TECHNOLOGY** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant-Intervenor** | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY**

Pursuant to Rule 7.2(a) of the Rules of the Court of Federal Claims ("RCFC") and this Court's May 31, 2007 oral order, defendant respectfully requests that plaintiff's motion for discovery be denied.

Plaintiff, CHE Consulting, Inc. ("CHE") seeks permanent injunctive relief to bar the Naval Oceanographic Office ("NAVO" or "agency") Major Shared Resource Center ("MSRC") and General Services Administration ("GSA") from proceeding under GSA solicitations conducted upon NAVO's behalf that seek vendors who could provide both hardware and software maintenance support for the MSRC's robotic tape library, manufactured by Storage Technology Corporation ("STK"), asserting that there is no rational basis for not dividing these maintenance requirements into multiple solicitations for separate awards.

CHE attempts to frame the issue now before the Court as an examination of the sufficiency of the agency's supplemental market survey. CHE Br. at 2. However, this is not the

issue pending before this Court. As this Court summarized the issue, "the review here is to determine whether the Agency's decision to put the hardware and software maintenance requirements together has a rational basis." March 29, 2007 Hearing Tr. at 49. CHE's request for discovery would not assist the Court to resolve that issue, and would only be helpful in CHE's attempt to keep its protest alive by conducting a "fishing expedition" that seeks to generate a valid basis for protest. CHE's motion should be denied.

## ARGUMENT

CHE is not entitled to discovery based upon its most current allegations and is not entitled to depose Government employees about its unsupported allegations of bad faith. In effect, CHE asserts that the agency's supplemental market research did not provide definitive answers to prove or disprove the agency's concerns over the perceived risk in dividing the responsibility for the maintenance of its robotic tape library; asserts that the agency must have discovered the answers to the questions CHE asserts are most important; and then proposes deposing the relevant Government employees to find the concealed or omitted information. CHE Br. at 2. The law does not provide for such an unauthorized "fishing expedition" into unsupported allegations of bad faith.

Finally, while CHE asserts that not all of the issues suggested by this Court were resolved, it is clear that the administrative record, as supplemented, demonstrates that the agency had a rational basis for its concerns about dividing the maintenance responsibility for a critical component of an important military capability. The supplemental materials demonstrate that agency officials considered the cost of keeping the maintenance responsibilities undivided, found that the potential annual savings would be wiped out by a brief period of outage at the MSRC,

found that adequate competition was available for the undivided tasks, reviewed the practices of a significant number of other users of STK robotic tape libraries to consider the circumstances of each, and concluded that the critically important military functions of the NAVO MSRC and the lives of sailors are too important to risk for the relatively minor potential savings and the higher likelihood of downtime deemed likely in dividing the maintenance responsibilities between two contractors.

## I. CHE Has Not Met Its Burden Of Demonstrating That It Is Entitled To Discovery

Discovery in a bid protest is not a matter of right. In a bid protest, the Court's review is limited to the already-existing administrative record. See Lions Raisins, Inc. v. United States, 51 Fed. Cl. 238, 244-46 (2001); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for summary judgment on the administrative record). In reviewing agency action under this narrow scope of review, "'the focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court.'" Florida Power & Light v. Lorion, 470 U.S. 729, 743-44 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)); Northrop Grumman Corp., v. United States, 50 Fed. Cl. 443, 457 (2001) (citing Camp v. Pitts, 411 U.S. at 142).

The Court of Appeals for the Federal Circuit has held that discovery is permissible only under extremely limited circumstances in bid protest cases. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (Fed. Cir. 2001). The Federal Circuit specifically observed that "[c]ontracting officers are not obligated by the APA to provide written explanations for their actions." Id. at 1337. Consequently, a reviewing court may require an explanation of a contracting officer's decision, but only in rare cases. The starting point in

determining whether to require an explanation of an agency decision is that "the agency decision is entitled to a presumption of regularity." Id. at 1338. "Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious." Id. (emphasis supplied). Consequently, a protestor "necessarily bears a heavy burden" to establish that it should be permitted to take depositions of agency personnel. Id. Although the court in Impresa allowed the taking of one, extremely limited deposition, it noted that "[t]his is a most unusual case." Id. at 1341.

Here, CHE has not met its burden of demonstrating that it is entitled to supplement the administrative record with additional deposition discovery of Mr. Gruzinskas or Ms. Spence. In the teleconference on May 31, 2007, this Court directed CHE's attention to the limited bases for discovery in a bid protest set forth in Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989). Those enumerated bases include an inadequate explanation of agency action, the agency's failure to consider relevant factors, the agency's consideration of evidence not included in the record, the complexity of the issues being considered by the Court, when evidence arising after the agency's action shows whether the decision was correct or not, when agencies are sued for a failure to act, the existence of certain environmental issues and where relief is at issue. Id. However, as addressed below, none of the four potential bases for discovery under Esch that were cited by CHE, CHE Br. at 8-9, justifies the depositions that CHE seeks.

### A. NAVO's Action Is Adequately Explained In The Record Before The Court

CHE asserts that discovery should be permitted because agency action is not adequately explained in the record before the Court, but asserts only that there is no evidence in the record

about "finger-pointing" and the potential for greater downtime associated with the need to coordinate multiple contractors. CHE Br. at 8. The administrative record contradicts CHE's assertion with respect to evidence of "finger-pointing" and contractor conflicts. See AR 389, 391-92. Moreover, CHE's assertion that NAVO's action is not clearly explained in the record is without basis. For example, the administrative record demonstrates that the NAVO MSRC is an essential military facility supporting Navy operations, including warfighters in combat, on and under the sea and in the air on a real-time, "24/7" basis, AR 409, 413-14, 416-18; that the potential cost savings of splitting the maintenance responsibilities would be eliminated by a very short outage of the MSRC facility, AR 406-07, including that potentially caused by confusion between two contractors seeking to remedy a complex problem, AR 406-07, 410-12, 414, 418; that possible loss of life or mission failure could occur in the absence of the MSRC's capability, AR 417-18; that adequate competition is available for obtaining the agency's requirement upon an undivided basis, AR 400-03; that NAVO's survey indicated that robotic tape library users with more complex missions generally select a unified maintenance solution similar to NAVO's, while those with a less demanding or less complex system often select separate maintenance vendors, presumably for cost reasons, AR 386-99; and that, based upon all these considerations, the contracting officer and key agency personnel consider the lower risk associated with a unified maintenance solution to be the minimum requirement for the NAVO MSRC, AR 403, 407, 412, 414-15, 417-18. While CHE continues to disagree with the agency's rationale, that rationale is manifestly set forth in full in the administrative record, and no discovery is needed under this Esch factor.

## B. NAVO Did Consider All Factors Relevant To Its Final Decision

CHE also asserts that discovery should be allowed because the agency purportedly failed to consider factors which are relevant to its final decision, but asserts only that if NAVO had contacted the list of agencies provided by CHE, NAVO might have been reassured about its concerns about possible downtime or contractor disputes. CHE Br. at 8. CHE's assertion amounts to nothing more than evidence of "mere disagreements with the contracting officer's assessment of the risks associated with its proposal." International Outsourcing Services, L.L.C. v. United States, 69 Fed. Cl. 40, 49 (2005). Such "naked claims" fall far short of meeting CHE's burden of demonstrating that NAVO's opinion is irrational. Id. Ultimately, CHE is merely disputing the agency's analysis and decision, rather than identifying any factor that NAVO failed to consider, so this Esch factor does not support the need for any discovery.

Additionally, as evidenced by the parties' earlier briefing, of the agencies CHE had listed in its complaint, only the Defense Information Systems Agency ("DISA") appeared to have a mission supporting the war effort directly. However, the NAVO survey indicated that CHE does not provide support to DISA's STK library, AR 395-97. Moreover, CHE previously provided information that the computers supported by CHE at DISA are used for such administrative tasks as tracking repair parts and issuing checks. CHE Mot. for Judg. on Admin. Rec., Exh. B at 3, ¶¶ 7-8. While important tasks, these pale in comparison to the NAVO MSRC's daily support of the operational Navy. Thus, these CHE customers appear to be in non-comparable circumstances.

## C. There Is No Indication That NAVO Considered Evidence Not In The Record

CHE also asserts that discovery should be allowed because NAVO purportedly considered evidence that it failed to include in the record. CHE Br. at 8. However, CHE has

absolutely no basis for this assertion:

> In this case, it is difficult to imagine that given the Court's instructions, neither Ms. Spence nor Mr. Gruzinskas asked those agencies that do not bundle whether they experienced down time or finger pointing. Thus, it is believed, that deposing both individuals will reveal what information was provided to the Agency in that regard, yet omitted from the supplemental declarations.

Id. As noted above, this issue was explored by NAVO. AR 389, 391-93. Additionally, discovery should not be based upon a protester's mere supposition that agency employees acted improperly, as discussed at section II below, and this Esch factor provides no support for allowing discovery.

**D. The Court Needs No Further Evidence To Understand The Issues Clearly**

Finally, CHE asserts that discovery is needed because this case is so complex that the Court needs more evidence to enable it to understand the issues clearly. CHE Br. at 8. In support of this assertion, CHE suggests that the Court needs to further examine the structure of the NAVO MSRC to determine the extent to which the robotic tape library is actually involved in Navy operations, whether other computer support at NAVO should be combined as well, and whether the Navy has the ability to backup the MSRC's capabilities in an emergency. CHE Br. at 9. With regard to the first issue, the MSRC's Director states, "[t]he NAVO MSRC mass storage capability is a critical, essential component of the center. A failure in this component prevents the customer from using the high performance compute [sic] engines located in the center and from accessing critical stored data." AR 414. The second issue is irrelevant to the question before this Court because, rather than asking why various maintenance services are not divided, CHE asks why the undivided services are not combined with those of other vendors, the

opposite of what CHE contends should be done. With regard to the third issue, Mr. Gruzinskas's statement merely indicates that, in an emergency, the Navy was able to use other computational systems during short-term outages of the MSRC's IBM supercomputers, AR 411, but this does not signify that the "priceless" information in the MSRC's storage facilities, AR 409, was offline. Ultimately, CHE's contentions regarding this Esch factor do not support discovery.

## II. CHE Is Not Entitled to Depose Agency Employees Absent Specific Evidence Of Bad Faith

CHE is not entitled to take the depositions of the personnel involved in the supplemental market survey because CHE has not cited record evidence of bad faith sufficient to overcome the presumption of regularity associated with the actions being challenged. CHE admits that it "is not claiming or even implying that [either individual] submitted untruthful affidavits," CHE Br. at 6, yet asserts "one has to assume that either [person] obtained this information but for whatever reason did not report it." Id. at 4 (emphasis added).

Government officials are presumed to act conscientiously and in good faith in the discharge of their duties. L.P. Consulting Group, Inc. v. United States, 66 Fed. Cl. 238, 243 (2005) (citing Spezzaferro v. Fed. Aviation Admin., 807 F.2d 169, 173 (Fed. Cir. 1986)). Proving that the Government acted in bad faith is intended to be very difficult. See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1240 (Fed. Cir. 2002). In order to overcome the presumption that Government officials acted in good faith, a plaintiff must allege and prove, by clear and strong evidence, specific acts of bad faith upon the part of the Government. L.P. Consulting, 66 Fed. Cl. at 243 (citing Galen Med. Assocs., Inc. v. United

States, 369 F.3d 1324, 1330 (Fed. Cir. 2004)). The level of proof to overcome this presumption is high, and has been equated with evidence of some specific intent to injure the plaintiff. Id. (citing Galen).

Here, CHE must show record evidence of bias to obtain discovery. See Information Technology & Applications Corp. v. United States, 316 F.3d 1312, 1323n.2 (Fed. Cir. 2003). CHE cannot show bad faith unless it demonstrates that the Government was motivated alone by malice. A-Transport Northwest Co. v. United States, 27 Fed. Cl. 206, 220 (1992) (quoting Gadsden v. United States, 111 Ct. Cl. 487, 489-90 (1948)); see Asco-Falcon II Shipping Co., v. United States, 32 Fed. Cl. 595, 604 (1994). CHE cannot point to a single affirmative act that allegedly constitutes Government misconduct, so no discovery is appropriate.

## III. The Agency's Rational Basis Has Been Fully Demonstrated

As set forth in our discussion above at p. 5, the agency has fully set forth its analysis of relevant operational military needs, potential cost savings and perceived risks of splitting this maintenance requirement; has established the existence of adequate potential competition for the undivided requirement; and has concluded that the agency's minimum requirement is that maintenance on this key part of a vital military system will not be divided. As Mr. Gruzinskas stated, MSRC personnel "constantly look for ways to cut costs on our contract expenditures, but this is not a prudent method to seek savings." AR 412. While it certainly might be of interest to the parties why a significant number of CHE's former customers returned to SUN/STK for service, AR 399, or what the maintenance history of each of the existing CHE agency customers has been, CHE Br. at 5, ultimately the agency manifestly has demonstrated a rational basis for its

decision. Not only is CHE's request for discovery clearly without legal or factual support, but the Court is now free to resolve the parties's motions for judgment upon the administrative record.

**CONCLUSION**

For the reasons set forth above, we respectfully request that the Court deny CHE's motion for discovery.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

s/Brian M. Simkin by s/Kathryn Bleecker
BRIAN M. SIMKIN
Assistant Director

s/F. Jefferson Hughes
F. JEFFERSON HUGHES
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3067
Fax: (202) 514-8640

Attorneys for Defendant

OF COUNSEL:
ANDREW SINN, ESQ.
Assistant Regional Counsel
U.S. GSA Office of Regional Counsel (4L)
77 Forsyth St., Suite 600
Atlanta, GA 30303
Tel: (404) 331-1535
Fax: (404) 331-1231

Dated: June 25, 2007

CERTIFICATE OF FILING

I hereby certify that on this 25th day of June, 2007, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ F. Jefferson Hughes