IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHE CONSULTING, INC., Plaintiff, | ) | |
| vs. | ) | Case No. 07-55C |
| THE UNITED STATES OF AMERICA, Defendant, | ) | Judge Wheeler |
| STORAGE TECHNOLOGY CORPORATION Defendant-Intervenor. | ) | |

**PLAINTIFF'S SECOND MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to this Court's July 9, 2007 Order, CHE Consulting, Inc. ("CHE") hereby submits its Second Motion for Judgment on the Administrative Record. As a part of this Motion, CHE hereby specifically incorporates by reference all factual and legal arguments contained in its March 6, 2007 Motion for Judgment on the Administrative Record; its March 22, 2007 Reply in Support of its Motion for Judgment on the Administrative Record; and its June 8, 2007 Motion for Discovery.

## INTRODUCTION

A Court's review in a protest action is limited to the facts that were before the Agency when it made the decision the protester now claims is adverse. The Court in this case, however, has departed from that long-standing legal principle by accepting for consideration the Agency's supplement to the administrative record. That supplement contains, among other things, a market survey as well as a cost analysis that was

performed long after the Agency decided to bundle the hardware and software maintenance requirements into a single procurement. This supplement is the classic example of post hoc rationalizations that are to be dismissed when a Court considers the merits of a protest.

Moreover, having been given the proverbial second bite at the apple, the Agency nevertheless failed to justify its decision to bundle these two requirements. All along, NAVO has maintained that separately procuring these two maintenance requirements would lead to finger pointing between the two vendors when assessing a problem, thereby causing undue disruptions of service. Yet the Agency's supplement submitted on May 21, 2007, does not find any evidence that finger pointing or undue delays will result. Thus, even if the Court were to accept NAVO's post-protest rationalization for its decision, that rationalization failed to justify its original decision.

The Court, therefore, is left with no choice but to find that the Agency's bundling decision was arbitrary and capricious, as well as an improper restriction on competition in violation of CICA. Accordingly, the Court must rule in favor of CHE.

## I. The Court's Acceptance of the NAVO's Supplementation to the Administrative Record would be an Unmitigated Violation of the APA and Supreme Court Precedent

CHE certainly recognizes that there are times when an administrative record must be supplemented to effectuate meaningful review by a court. But there is difference between explaining what was meant by an otherwise curt existing record, and creating a brand new one in an attempt to justify a previously made decision. The latter, is a direct contravention of the APA as well as United States Supreme Court precedent, which is why this Court must reject NAVO's May 21, 2007 supplementation.

The Supreme Court has made clear that when applying the APA's "arbitrary and capricious" standard, the "focal point for judicial review should be the administrative record already in existence, ***not some new record made initially in the reviewing court***." Camp V. Pitts, 411 U.S. 138, 142 (1973) (emphasis added). "[R]eview is to be based on the full administrative record that was before the Secretary ***at the time*** he made his decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) (emphasis added). Put another way:

> If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.
>
> * * *
>
> To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations.

Walter O. Boswell Memorial Hosp. v. Heckler, 749 F. 2nd 788, 792 (D.C. Cir. 1984).

Relying on the Supreme Court's decision of Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983), this Court found that "[d]ocuments that pre-date or are contemporaneous with the relevant [agency] decisions may appropriately be a part of the Administrative Record. ***Those created after-the-fact are suspect, as courts reviewing an administrative record recognize that they must reject 'post hoc rationalizations' as a basis for the agency action***." Arch Chemicals, Inc. v. U.S., 64 Fed. Cl. 380, 386 (2005). See also Rig Masters, Inc. v. U.S., 70 Fed. Cl. 413, 423 (2006) (court rejected post-award debriefing memorandum as a post hoc rationalization because it constituted material that did not relate to events that transpired during the procurement process); Lion Raisins, Inc. v. U.S., 51 Fed. Cl. 238,

246 (2001)(accepting a subsequent rationale would transform an agency decision from a finite requirement that the agency articulate the basis for its action to a fluid defense that takes final form when an agency must answer in court).

The "fluid defense" referred to in Lion Raisins is exactly what has happened in this case. This Court has permitted the Agency to conduct market research and a cost analysis – after this case was filed and after the original Motions for Judgment on the Administrative Record had been submitted and argued. The supplementation is clearly designed to provide some measure of legitimacy to the Agency's prior decision to bundle the contract requirements. Because this was information that in no way contributed to the original bundling decision, it must be stricken from the record and rejected by the Court. To do otherwise would be an outright rejection of over 30 years of legal precedent.

## II. The Supplementation Fails to Support NAVO's Original Decision to Bundle the Two Contract Requirements

From the inception of this protest, NAVO has consistently given the following two justifications for the need to bundle the hardware and software maintenance requirements:

- Segregating the software and hardware maintenance requirements would lead to finger pointing between the two vendors;
- Finger pointing would result in additional and thereby unnecessary down time for the Agency.

See AR 164, 186-89; and 3/29/07 Hearing Transcript, p. 21, lines 5-12. Recognizing, however, that the administrative record was lacking in this regard, the Court stated:

> The problem, as I see it, is to determine whether an administrative record without any evidence satisfies the rational basis test. ***What I see from the administrative record is a string of conclusory type statements that may be correct or may not be, but I can't tell.*** The statements provided are in a relatively brief affidavit. They may have some logic to them, but it

> seems that the Agency has not done its homework in a way that it should, in a way that would be prudent.

See 3/29/07 Hearing Transcript, p. 49 (emphasis added). The Court went on to note that what the administrative record needed was "empirical data" either supporting or refuting the Agency's position that down time and finger pointing were the necessary results of segregating these two maintenance requirements.

> I'm sure that Mr. Kellogg would be the first to agree that he probably would not have a leg to stand on if the Agency had done a proper job of looking at the issue with ***some empirical data about what might be expected pro and con if it went at this one way or the other***.

Id. at p. 50 (emphasis added).

With respect to such data, the Court suggested that NAVO examine whether other agencies, that separately procure these services, experience additional down time and finger pointing between the two vendors.

> In thinking about the type of data that would be of interest to the Court, and I'm not at all trying to limit what the Agency may want to submit, ***but it seems to me it would be relevant, for example, to look at the availability requirements of these other federal agencies to see if it's the same as what this Agency requires, if it's a 97 percent availability requirement that applies, and if the approach of having two vendors satisfies that requirement fairly routinely one might conclude well, maybe two vendors would work just fine***.

Id. (emphasis added).

In the same fashion, the Court advised that it would be valuable to determine if there had been any finger pointing issues at the agencies that had separately procured the two maintenance requirements.

> It would be of interest to know whether other agencies have had any evidence of finger pointing or disagreement as we might say when two vendors are employed.

Id.

One would assume that given these specific directions from the Court, NAVO's market survey would actually address the concerns it had raised all along. It did not. The Court wanted to know whether the agencies that do not bundle these two distinct maintenance services suffer from the kinds of problems that NAVO assumes will occur at its facility: namely finger pointing and down time. See 3/29/07 Hearing Transcript, p. 50. What NAVO provided, however, was simply a listing of the agencies it was able to contact and whether they segregated the requirements or bundled them. See AR 388-402.

Of those that did not bundle, the NAVO failed to inform the Court whether those agencies experienced any finger pointing or undue down time as result of having separate vendors for hardware and software maintenance. Given the fact that these were the two issues used by NAVO to justify its restriction on competition, its failure to report such problems leads to the inescapable conclusion that such concerns were merely illusory in nature.

As stated in the Introduction, this is the second opportunity provided by the Court to the Agency to establish support for its position that there is documented and well founded reasons for restricting competition in this case. Competition is the cornerstone of federal procurements. It cannot simply be cast aside because of unsubstantiated concerns over down time. Yet in contravention to the Court's direction, NAVO has provided no evidence that de-bundling the services results in down time. Absent such proof, the Agency's decision is nothing more than pure speculation (or "theoretical in nature" as stated by Government counsel) which cannot, under any circumstances, justify a purposeful restriction on competition.

The Contracting Officer also provided a calculation for the theoretical cost of the NAVO facility being down for a single day. See AR 404-08. However, Mr. Gruzinskas provided a supplemental declaration which described an IBM problem that caused at least 16 hours of delay. See AR 411, ¶ 10. Why then, one must wonder, was the cost analysis not performed on this actual incident? Perhaps it is because, as Mr. Gruzinskas explained, that despite that equipment being down, NAVO was able to compensate by using other available systems. Id. at ¶ 11. In other words, when the equipment went down, NAVO was, nevertheless, still capable of performing its daily functions.

This admission, cuts against the Agency's unsupported claim that having a vendor for hardware maintenance and a vendor for software maintenance will lead to a complete disruption of services. Clearly, that is not the case. And this is not, as the Court suggested in its Order denying discovery, simply a matter of CHE disagreeing with the Agency. NAVO has to prove that its decision to restrict competition was necessary to meet its minimum needs. It has not done so, and the one example of down time that it did provide actually supports the position advocated by CHE.

The final three supplemental declarations are from Tom Dunn, Captain Jeffrey Best, and Rear Admiral Timothy McGee. These declarations contain the same type of conclusory remarks that the Court found to be inadequate during the first round of Motions for Judgment on the Administrative Record. See 3/29/07 Hearing Transcript, p. 49. Indeed, the only new piece of information contained in those declarations was from Captain Best who related an incident where NAVO advised some Marines to make an ingress by helicopter rather than by boat due to changes in the tide. See AR 416, ¶ 4. Noticeably absent from that declaration is whether such information was derived from the

robotic tape library system, which is the equipment at issue in this procurement, or perhaps the IBM equipment Mr. Gruzinskas referred to in his supplemental declaration, or some other equipment that has yet to be revealed by NAVO. Moreover, given Mr. Gruzinskas' supplemental affidavit, it would have been unlikely for NAVO to be completely shut down because of a hardware malfunction as the facility apparently has a means of continued operation in the event of such an occurrence.

## CONCLUSION

It would be reversible error for the Court to accept any of the Agency's post hoc rationalizations for its decision to bundle these two maintenance contracts. The Agency's supplementation is not just an effort to explain an existing decision. Rather, it is an entirely new record created for the first time after the protest was filed and after the first Motions for Judgment on the Administrative Record had been submitted and argued. As such, AR 385 through 418 must be stricken and disregarded by the Court.

If, however, the Court chooses to consider the supplementation, then it should find that the Agency, even after express direction from the Court, failed to document instances where undue down time resulted when agencies separately procured these two maintenance requirements. As such, its' down time concerns remain as they were before: utterly speculative. Because speculation cannot support a purposeful restriction on competition, the Court must find in favor of CHE.

Respectfully submitted,

THE KELLOGG LAW FIRM

By /s/ Steven E. Kellogg
Steven E. Kellogg
2129 W. Main Street
Belleville, IL 62226
(618) 234-1900
(618) 234-5594 FAX

Attorney for the Plaintiff

**Certificate of Service**

I hereby certify that on July 30, 2007, the foregoing was filed electronically. I understand that notice of this filing be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven E. Kellogg
Steven E. Kellogg