IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHE CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 07-55C |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | Judge Wheeler |
| | ) | |
| Defendant, | ) | |
| | ) | |
| STORAGE TECHNOLOGY CORPORATION | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**CHE'S MOTION AND MEMORANDUM IN SUPPORT FOR THE ISSUANCE OF AN INJUNCTION PENDING ITS APPEAL**

Plaintiff CHE Consulting, Inc. ("CHE") moves this Court, pursuant to Local Rule 62(c), to enjoin the Government from proceeding with its bundled procurement until the Federal Circuit decides CHE's Appeal which is currently pending before that Court.

## Introduction

As the Court may recall, CHE protested the Government's decision to bundle hardware and software maintenance of the Agency's robotic tape library system into a single contract. This approach restricted competition because only the OEM could maintain the software as it was the OEM's

intellectual property. However, numerous companies, such as CHE, were qualified to maintain the hardware portion of the contract. As such, CHE sought to have the contract de-bundled, thereby enhancing competition by allowing such companies to bid on just the hardware portion of the work.

Because the administrative record lacked any meaningful justification for restricting competition, this Court requested – after the submission of the briefs and the hearing – that the Agency to conduct a market survey of other federal agencies and to perform a cost analysis. Ultimately, this Court relied on this after-the-fact analysis to hold that the Government's restriction on competition was reasonable.

CHE has appealed that decision to the Federal Circuit, arguing that such after-the-fact justifications of the Government's prior decision constituted a post hoc rationalization that could not be considered in this Administrative Procedures Act action. Both parties have filed their principal briefs, and we are waiting for the Court to schedule oral arguments.

Yesterday, however, the Government advised that it was moving forward with its bundled procurement even though CHE's Appeal at the Federal Circuit was pending. According to the Government, it solicited proposals late last week and they are to be submitted to the Agency no later than tomorrow, March 26, 2008.

If the Agency is allowed to proceed with this procurement, select a vendor, who then proceeds with performance, then CHE's appeal will, for all practical purposes, be rendered moot. After all, no court will force the Government to terminate an existing government contract. The Government certainly understands this dilemma, which is presumably why it is taking this action.

CHE's appeal is by no means frivolous. There is a legitimate legal issue at stake, and it is quite possible that the Federal Circuit will find in CHE's favor. As such, CHE is respectfully requesting that this Court maintain the status quo thereby giving the Federal Circuit time to render its decision. The Government will suffer no harm as a result, and the public interest is best served by preventing the Agency from emasculating a legitimate appeal by rushing forward with its procurement.

## Relevant Facts

1. On September 11, 2007, this Court ruled that the Government's decision to restrict competition by bundling hardware and software maintenance requirements into a single contract was reasonable.

2. In so doing, this Court relied on the Government's market survey and cost analysis that was conducted after the parties had filed their briefs and after a hearing on the merits had occurred.

3. CHE filed a timely Notice of Appeal with U.S. Court of Appeals for the Federal Circuit contending that this Court violated the Administrative Procedures Act by accepting and relying upon post hoc rationalizations for the Government's decision to restrict competition.

4. At the time, there was no need to file for this injunctive relief as counsel for the Agency had assured CHE that the incumbent vendor would be performing the maintenance services at least through March, 2008.

5. On Monday March 24, 2008, Government counsel advised by e-mail that NAVO, through the GSA, formally sought proposals for these services – on a bundled basis – on March 20, 2008 and that proposals must be received by this Wednesday, March 26, 2008.

6. That same day, after learning of this procurement, CHE requested that the contracting officer provide it with a copy of the RFQ. As of this filing, the contracting officer has ignored CHE's request.

7. The Government has provided no explanation as to why it cannot continue its current contract – as it did when the case was pending before this Court – with the incumbent vendor until the Federal Circuit rules on CHE's Appeal.

7. If the Government is allowed to proceed with this procurement, and a new vendor is selected and begins actual performance, then CHE's

Appeal will be rendered moot. Even if CHE prevails at the Federal Circuit, no court will force the Government to cancel an existing and ongoing contract.

8. For this reason, CHE respectfully requests that the status quo be maintained until the Federal Circuit renders its decision. Both CHE and the Government have filed their respective briefs in the Appeal. At present, we are waiting for the Court to schedule oral arguments.

## **Analysis**

This Court is empowered to enjoin the Government from proceeding with the procurement pending CHE's appeal, even though the Court ruled against CHE when the case was before it. Alaska Central Express, Inc. v. United States, 51 Fed. Cl. 227, 229 (2001). "When considering such a motion under RCFC 62(c), the court is guided by the Federal Circuit's jurisprudence under FED. R. P. 8(a) and assesses the movant's chances for success on appeal and weighs the equities as they affect the parties and the public." Id., citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987).

In considering whether to maintain the status quo while CHE's appeal is being decided by the Federal Circuit, this Court is to analyze the following factors:

> (1) whether the movant has made a strong showing that he is likely to succeed on the merits;

> (2) whether the movant will be irreparably injured absent an injunction;
>
> (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

Id., citing, Standard Havens Prods. V. Gencor Indus., 897 F.2d 511, 512 (Fed. Cir. 1990). Each factor is considered below.

## I. Likelihood of Success on the Merits

It is important to note at the outset that this Court need not find that CHE is likely to succeed in its Appeal in order to issue an injunction maintaining the status quo.

> These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested. *Hybritech, Inc. v. Abbot Labs*., 849 F.2d 1446, 1451 (Fed. Cir. 1988).
>
> When there is substantial equity, and need for judicial protection, ***whether or not movant has shown a mathematical probability of success***, then an order maintaining the status quo is appropriate.

John R. Sand & Gravel Co. v. United States, 60 Fed. Cl. 347, 349 (2004), citing Standard Havens Prods., 897 F.2d at 512-13 (emphasis added).

The Court in Alaska Central Express understandably observed that if it had thought "that plaintiff would succeed on the merits, it would not have

ruled against the plaintiff in the first place . . ..” 51 Fed. Cl. at 230.

Nevertheless, that Court correctly recognized that the requirement of Federal Rule of Appellate Procedure 8(a) allows for an injunction:

> where [the movant] establishes that it has a strong likelihood of success on appeal, ***or*** ***where, failing that, it can nonetheless demonstrate a substantial case on the merits, provided the other factors militate in movant's favor.*** *Standard Havens*, 897 F.2d at 512 (quoting *Hilton*, 481 U.S. at 778). ***When harm to applicant is great enough, a court will not require ‘a strong showing’ that applicant is ‘likely to succeed on the merits***. *Id.* Accordingly, if the equities weigh heavily in favor of maintaining the status quo, this court may grant an injunction under RCFC 62(c) where the question raised is novel or close, especially when the case will be returned to the trial court should the movant succeed. *See id.* at 513 ([***I]f the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation*** ....).

Id. (emphasis added) (internal quotations omitted).

That is precisely the case here. CHE has advanced on appeal a legitimate legal argument which is fair ground for litigation. Moreover, as will be demonstrated in sections II, III and IV below, the other three factors weigh in CHE’s favor. Given these circumstances, this Court should preserve the status quo while the Federal Circuit considers the Appeal.

### A. The Merits of CHE's Appeal is Fair Ground for Litigation

When ruling in favor of the Government, this Court relied upon an after-the-fact market survey and cost analysis performed by the Agency in the middle of litigation. In other words, the Agency was allowed to formulate new reasons to justify its prior decision to restrict competition by bundling the two maintenance services. The reason CHE's appeal has a "substantial case on the merits", is that there is a considerable amount of controlling case law prohibiting consideration of these types of post hoc rationalizations.

In 1947, the Supreme Court articulated the basis on which administrative agency decisions should be reviewed and considered.

> "(A) simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, ***must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action . . ..***"

Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947).[1] As reflected more fully below, the Chenery decision and its

---

[1] Last year, the Federal Circuit relied upon this same passage from Chenery in finding that the U.S. Postal Service's interpretation of its own regulations was arbitrary and capricious. In so doing, that Court cautioned that "[w]e must ensure that the agency is not now masquerading a post hoc

progeny have continued to define not only the scope of judicial review, but also delineated the kind of information that can be considered by a reviewing court.

**B. Judicial Review is Limited to the "Whole Record"**

The Tucker Act, which provided this Court with jurisdiction to review pre-bid protests, mandates that in such actions, "the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." 28 U.S.C. § 1491(b)(4). Section 706 of Title 5 is the Administrative Procedures Act ("APA") which provides in relevant part:

> The reviewing court shall –
>
> ***
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be –
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> ***
>
> ***In making the foregoing determinations, the court shall review the <u>whole record</u>*** or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (emphasis added).

---

rationalization as a then-existing 'interpretation.'" <u>Gose v. United States Postal Service</u>, 451, F.3d 831, 838-39 (Fed. Cir. 2006).

It is the "whole record" provision of the APA that is most applicable to the merits of CHE's appeal. In considering the scope of the "whole record" – the Supreme Court in Citizens to Preserve Overton Park, Inc. v. Volpe made clear that "review [of the agency's decision] is to be based on the full administrative record ***that was before the Secretary at the time he made his decision.***" 401 U.S. 402, 420 (1973) (emphasis added).[2] Two years later, the Supreme Court again confirmed that the "focal point for judicial review should be the administrative record already in existence, ***not some new record made initially in the reviewing court***." Camp v. Pitts, 411 U.S. 138, 142 (1973) (emphasis added).

Since then, appellate courts have consistently defined the APA's "whole record" as that information that was before the agency when it made its decision – not new information developed after-the-fact. In this regard, the D.C. Circuit held:

> ***If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.***
>
> * * *
>
> To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to

[2] Overruled on unrelated grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).

> be prescient or allowing them to take advantage of post hoc rationalizations.

Walter O. Boswell Memorial Hosp. v. Heckler, 749 F. 2d. 788, 792 (D.C. Cir. 1984) (emphasis added). See also Highway J Citizens Group v. Mineta, 349 F.3d 938, 958 (7th Cir. 2003) ("The purpose of confining judicial review to the administrative record is to ensure that agencies adequately evaluate their proposed course of action before they act and do not simply attempt to justify rash, uniformed actions through post hoc rationalizations once they are aware they are being sued"); Rite Aid of Pennsylvania, Inc. v. Houston, 171 F.3d 842, 850-51, (3rd Cir. 1999) ("the district court properly ruled that it would not create a new record nor base its review on any 'post-hoc rationalizations' made by the Department after it had taken the disputed action"); Lewis v. Babbitt, 998 F.2d 880, 882 (10th Cir. 1993) ("Judicial review under [the APA] standards is generally based on the administrative record that was before the agency at the time of its decision and reviewing courts may not rely on litigation affidavits that provide post hoc rationalizations for the agency's action").

Even precedent from this Court makes clear that it cannot consider post hoc justifications to uphold a prior agency decision. Consider for example, Arch Chemicals, Inc. v. U.S., 64 Fed. Cl. 380 (2005). When relying on the Supreme Court's decision of Motor Vehicle Manufacturers

Association of the United States, Inc. v. State Farm Mutual Auto Insurance Co.,[3] that court found that "[d]ocuments that pre-date or are contemporaneous with the relevant [agency] decisions may appropriately be a part of the Administrative Record. ***Those created after-the-fact are suspect, as courts reviewing an administrative record recognize that they must reject 'post hoc rationalizations' as a basis for the agency action***." Id. at p. 386 (emphasis added). See also Rig Masters, Inc. v. U.S., 70 Fed. Cl. 413, 423 (2006) (court rejected post-award debriefing memorandum as a post hoc rationalization because it constituted material that did not relate to events that transpired during the procurement process); Lion Raisins, Inc. v. U.S., 51 Fed. Cl. 238, 246 (2001) (accepting a subsequent rationale would transform an agency decision from a finite requirement that the agency articulate the basis for its action to a fluid defense that takes final form when an agency must answer in court).

**C. Supplementation versus Post Hoc Rationalizations**

Generally speaking, supplementation of the administrative record is appropriate in circumstances where, for example, the record does not adequately explain the basis for an agency's decision. Indeed, even the Citizens to Preserve Overton Park Court acknowledged that a reviewing

[3] 463 U.S. 29, 50 (1983)

court may need to "require the administrative officials who participated in the decision to give testimony explaining their action." 401 U.S. at 420.

This is especially true in the bid protest context because, "as a practical matter . . . the 'administrative record' is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review." Cubic Applications, Inc. v. U.S., 37 Fed. Cl. 345, 349-50 (1997).

> This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some judgment in furnishing the court with the relevant documents. In order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence, and possibly limited discovery, ***aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protester or the court as to the basis of the agency action***.

Id. (emphasis added).

But explaining or providing context to the existing record is a far cry from providing new reasons to justify an old decision. The United States Court of Appeals for the District of Columbia captured this distinction perfectly in its AT&T Information Systems, Inc. v. GSA Decision:

> GSA urges consideration of the Fuchigami declaration was proper under a limited exception allowing agencies to supplement the administrative record to provide "such additional explanations of the reasons for the agency decision as may prove necessary." But this exception may not be

> employed to offer post-hoc rationalizations where no rationalization exists. ***Although the record may be supplemented to provide, for example, background information or evidence of whether all relevant factors were examined by an agency, we have made clear that "[t]he new material should be merely explanatory of the original record and should contain no new rationalizations."***

810 F.2d 1233, 1236 (D.C. Cir. 1987) (citations omitted) (emphasis added).

Thus, under the APA, it is appropriate to provide additional documents or even affidavits that attempt to explain what is meant by an otherwise curt administrative record. But to provide new information that was never considered by the agency when it made its decision constitutes the very definition of a post hoc rationalization. And that is what the Agency provided and the Court accepted in this case.

There can be little doubt that CHE has raised on appeal legitimate and meaningful legal arguments concerning this Court's acceptance of the Agency's new reasons for justifying its prior decision. As such, and given that the other injunction factors weigh in CHE's favor, CHE respectfully requests that this Court maintain the status quo pending resolution of CHE's Appeal.

## II. Irreparable Harm

If the Government is allowed to proceed with its bundled procurement, then not only will CHE's Appeal be effectively rendered moot,

but, even more important, it will also be denied the opportunity to compete for or obtain a government contract.

When assessing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993). The potential loss of valuable business on a contract, deriving from a plaintiff's lost opportunity to compete in a fair competitive bidding process for a contract, is sufficient to find irreparable harm. See United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998) ("[T]he opportunity to compete for a contract and secure any resulting profit has been recognized to constitute significant harm"); Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 398 (1999) (the denial of the right to have a bid fairly and lawfully considered constitutes irreparable harm); Magnavox Elec. Sys. Co. v. United States, 26 Cl. Ct. 1373, 1379 (1992) (loss of the opportunity to compete for a government contract constitutes irreparable injury); TRW Envtl. Safety Sys., Inc. v. United States, 16 Cl. Ct. 520, 529 (1989) (same).

This irreparable harm is based on the proposition that plaintiffs in such a position lack an adequate remedy at law as "an action at law would

allow plaintiff to recoup only bid preparation costs." Isratex, Inc. v. United States, 25 Cl. Ct. 223, 231 (1992).

In this case, the Government has decided to proceed with a bundled procurement even though CHE's Appeal is pending. Given the fact that CHE is not allowed to participate in the new procurement, it will suffer irreparable injury unless this Court orders the Government to maintain the status quo.

## III. There Will be No Injury to the Government

No party will suffer injury as a result of maintaining the status quo. There is no legal reason why the Government cannot extend the current contract while CHE's Appeal is pending. The Government voluntarily did so during the pendency of the case before this Court and suffered no injury as a result. It will suffer no injury by doing so again.

## IV. The Public Interest Lies with Maintaining the Status Quo

The public interest will not be served if the Federal Circuit rules in CHE's favor but the Government has already awarded a new contract and the vendor has begun performance. Under such circumstances, CHE's protest will have been vindicated, but it will nevertheless be denied a remedy

because no court will force the Government to cancel an existing contract. A right without a remedy does not serve the public interest.

Moreover, the public clearly has an interest in achieving full and open competition under this procurement which is best served by requiring the Agency to employ the least restrictive means for promoting competition. See Overstreet Electric Company, Inc. v. United States, 47 Fed. Cl. 728, 744 (2000). Indeed, CICA codifies this public policy goal when it requires that agencies "obtain full and open competition through the use of competitive procedures in accordance with the requirements of this chapter and the Federal Acquisition Regulation…." 10 U.S.C. § 2304 (a)(1)(A). Here, the public interest will be best served by maintaining the status quo, thereby allowing CHE the opportunity to have its Appeal heard and considered by the Federal Circuit.

**Conclusion**

The Government knows full well that moving forward with this procurement and having its new vendor begin performance will for all practical purposes render CHE's Appeal irrelevant. That is the reason why it is imperative that this Court issue the injunction and maintain the status quo while CHE prosecutes its legitimate Appeal at the Federal Circuit. Because the Government will suffer no harm as result, CHE respectfully requests that

this Court issue an injunction preventing the Government from proceeding with its procurement while CHE's Appeal is pending at the Federal Circuit.

Respectfully submitted,

THE KELLOGG LAW FIRM

By_/s/ Steven E. Kellogg________
Steven E. Kellogg
2129 W. Main Street
Belleville, IL 62226
(618) 234-1900
(618) 234-5594 FAX
skellogg@kellogglawfirm.com

Attorney for the Plaintiff

**Certificate of Service**

I hereby certify that on March 25, 2008, the foregoing was filed electronically. I understand that notice of this filing be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven E. Kellogg_______________
Steven E. Kellogg